UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JUAN ALVARO SICAJAN DIAZ,

              Plaintiff,

                -against-

PIZZA NAPOLITANA, INC., d/b/a
DARO'S PIZZA AND CHICKEN, et al.,

              Defendants.

----------------------------------------------------X

         REPORT AND
         RECOMMENDATION

         19 CV 4911 (EK)(RML)

LEVY, United States Magistrate Judge:

        On August 28, 2019, plaintiff Juan Alvaro Sicajan Diaz ("plaintiff") filed this

action against defendants Pizza Napolitana, Inc., Fausto Campoverde and Nelson Castillo

(collectively, "defendants") for unpaid minimum wages and overtime compensation pursuant to

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor

Law ("NYLL").  (See Complaint, dated Aug. 28, 2019 ("Compl."), Dkt. No. 1.)  Plaintiff filed

a joint motion for settlement approval on September 16, 2020.  (See Motion for Settlement

Approval, dated Sept. 16, 2020 ("Pl.'s Mot."), Dkt. No. 20.)  By order dated September 18,

2020, the Honorable Eric R. Komitee, United States District Judge, referred plaintiff's motion

for settlement approval to me for report and recommendation.  For the reasons stated below, I

respectfully recommend that the motion for settlement approval be granted.

## BACKGROUND AND FACTS

        Plaintiff alleges that from March 2015 through June 2019, he worked for

defendants as a "dishwasher, food preparer, delivery person and helper."  (Compl. ¶¶ 24-25.)  In

this role, plaintiff claims he worked eighty-four hours per week and received a weekly "salary"

in cash.  (Id. ¶¶ 27-28, 37.)  When plaintiff first started working for defendants, he was paid

$440 per week.  (Id. ¶ 28.)  By the end of his employment, he was paid $580 per week.  (Id.)

Plaintiff alleges that defendants willfully failed to pay him minimum wages and overtime

throughout his employment.  (Id. ¶¶ 33, 49-52.)

On November 20, 2020, at counsel's request, the court referred this case to

mediation.  (See Minute Entry, dated Nov. 20, 2020.)  Since that time, the parties periodically

reported that they were diligently working to resolve this matter.  (See Status Report, dated Apr.

9, 2020, Dkt. No. 15; Status Report, dated May 22, 2020, Dkt. No. 16; Status Report, dated

June 19, 2020, Dkt. No. 17; Status Report, dated Aug. 7, 2020, Dkt. No. 19.)  On September 16,

2020, plaintiff submitted a motion for settlement approval.  (See Pl.'s Mot.)  After reviewing

the parties' thorough submissions, I found that a fairness hearing was not necessary and that the

motion could be decided on the papers.  (See Minute Entry, dated Nov. 28, 2020.)

## DISCUSSION

### A.  The Standard for Approving FLSA Settlements

The Second Circuit has held that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling

FLSA claims with prejudice require the approval of the district court or the [Department of

Labor] to take effect."  Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir.

2015).  Before approving a proposed settlement, a court must determine that the agreement is

"fair and reasonable."  Wolinsky v. Scholastic, Inc., 900 F. Supp. 332, 335 (S.D.N.Y 2012).

"In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a

court should consider the totality of circumstances, including but not limited to the following

factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will

enable the parties to avoid anticipated burdens and expenses in establishing their respective

claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." Id. (citation and internal quotation marks omitted); see also Perez-Ramos v. St. George Holding Corp., No. 18 CV 1929, 2020 WL 415818, at *2 (E.D.N.Y. Jan. 27, 2020) ("District courts in this circuit frequently look to the factors outlined in Wolinsky . . . to determine the reasonableness of a proposed settlement.").

Additionally, the settlement must not offend the FLSA's "primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." Cheeks, 796 F.3d at 205-07. In Cheeks, the court recognized several examples of abusive provisions, including "highly restrictive confidentiality provisions," "overbroad release[s] that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage and-hour issues,'" and attorney's fees of "'between 40 and 43.6 percent of the total settlement payment.'" Id. at 206 (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 173-81 (S.D.N.Y. 2015)).

B.   The Proposed Settlement Agreement

The instant motion for settlement approval includes the parties' proposed settlement agreement. (See Settlement Agreement, dated Sept. 10, 2020 ("Agreement"), Dkt. No. 20-1.) The agreement provides that, in exchange for the settlement award, plaintiff will seek dismissal of this case with prejudice and release defendants from "any and all claims, obligations, debts, liabilities, demands, or causes of action" under the FLSA and the NYLL. (Agreement at 2-4.) The total settlement award is $32,500; plaintiff will receive $20,774 and plaintiff's counsel will receive $11,726 in attorney's fees and costs. (Pl.'s Mot. at 2.) The settlement will be paid in ten

installments, the first in the amount of $5,000 and each subsequent payment in the amount of $3,055.55.  (Agreement at 2.)  Should defendants fail to pay an installment after being given notice and an opportunity to cure, a provision in the Agreement provides that plaintiff "shall be permitted to apply to the District Court for a judgment or for restoration of the case to the court's active calendar, or for any other relief available by law."

(Id. at 6-7.)  The Agreement also contains a mutual non-disparagement provision.  (Id. at 6.)

1. Wolinsky Factors

The proposed settlement satisfies the factors articulated in Wolinsky.  First, plaintiff's counsel states that the "range of recovery for plaintiff was wide."  (Pl.'s Mot. at 2.) Plaintiff could have recovered up to $100,000, but plaintiff also could have recovered nothing if the case was dismissed.  (Id.)  Under the settlement agreement, defendants will pay a total of $32,500 and plaintiff will recover $20,774.00.  (Id.)  This means plaintiff's net settlement represents approximately 20.8% of his total alleged damages.  While this is a smaller percentage than some FLSA approved settlements, see, e.g., Redwood v. Cassway Contracting Corp., No. 16 CV 3502, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (finding net settlement of 29.1% of FLSA plaintiffs' maximum recovery reasonable), given the disputed facts and liability, as well the litigation risks discussed below, plaintiff's settlement amount is reasonable.

Second, the settlement will enable plaintiff to avoid the expense and aggravation of additional litigation.  Defendants dispute the length of employment, the hours worked, and whether plaintiff was paid a weekly salary.  (Pl.'s Mot. at 2.)  Additionally, plaintiff's counsel noted that COVID-19 "makes settlement even more important, as cases are taking longer to progress and employers and employees alike face unprecedented financial stresses."  (Id.)  The

settlement allows both parties to expedite the resolution of this matter and avoid costly motion practice.

Third, the settlement will enable plaintiff to avoid the risks of litigation.  Had litigation proceeded, plaintiff's counsel stated, "it is certain that attorneys' fees on both sides would have increased, but plaintiff himself may not have fared significantly better."  (Id.)  Indeed, there was even the possibility that the case could have been dismissed entirely because the employer allegedly did not meet the FLSA's enterprise coverage requirements of $500,000 in gross sales as confirmed by federal tax returns.  (See id.)

As for the last two factors, the parties' settlement is the product of negotiations between counsel before an experienced FLSA mediator from the Eastern District Mediation Panel, see id. at 3, which suggests that the terms are "the product of arm's length bargaining and that there is a reduced risk of collusion" between the parties.  Vidal v. Eager Corp., No. 16 CV 979, 2018 WL 1320659, at *2 (E.D.N.Y. Mar. 13, 2018).

    2. Release of Claims Provision

Turning next to specific clauses that could offend the remedial purposes of the FLSA, the settlement agreement does contain a release of claims provision. Broad release provisions are generally impermissible.  See Cheeks, 796 F.3d at 206.  "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'"  Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (citing Lopez, 96 F. Supp. at 181).

Here, however, plaintiff only agrees to release defendants from "any and all

claims, obligations, debts, liabilities, demands or causes of action" related to "any alleged acts occurring before the effective date of this Agreement as it relates to any claims made by the plaintiff" arising under the FLSA and the NYLL.  (Agreement at 4.)  Courts have found similar releases permissible if they were limited to claims arising under the FLSA and NYLL.  See, e.g., Yunda v. SAFI-G, Inc., No. 15 CV 8861, 2017 WL 1608898 at *3 (S.D.N.Y. Apr. 28, 2017) (approving release that included both known and unknown claims and was limited to FLSA); Hyun v. Ippudo USA Holdings, 14 CV 8706, 2016 WL 1222347, at *3-*4 (S.D.N.Y. Mar. 24, 2016) (approving release that included both known and unknown claims and claims through the date of the settlement that was limited to wage and hour issues).  Therefore, I find the Agreement's release of claims language to be sufficiently narrow.

    3. Non-Disparagement Provision

        The settlement agreement also contains a mutual non-disparagement provision. (See Agreement at 5-6.) While non-disparagement clauses are not *per se* objectionable, courts have held that, insofar as they operate to bar plaintiffs from making "any negative statement" about defendants, they must include a "carve-out for truthful statements about plaintiffs' experience litigating the case."  Lopez, 96 F. Supp. 3d at 180 n.65.  Even with such a carve out, a court must still determine whether the non-disparagement clause, when examined as a whole, is fair and reasonable.  See Galindo v. E. Cty. Louth Inc., 16 CV 9149, 2017 WL 5195237, at *3 (S.D.N.Y. Nov. 9, 2017) ("[C]ourts must ensure that any confidentiality and nondisparagement clauses are not overly restrictive.").  That analysis should consider both whether the term is fair and reasonable between the parties themselves as well as whether the term would otherwise impermissibly frustrate implementation of the FLSA.  See Lopez, 96 F. Supp. 3d at 178-79.

In the Agreement, the non-disparagement clause does contain a carve-out for plaintiff to make "truthful statements concerning [the FLSA] claims and defenses asserted in this action." (Agreement at 6.)  Additionally, the non-disparagement clause applies equally to plaintiff and defendants.  (See id. at 5-6.)  For these reasons, I find that the non-disparagement provision is fair and reasonable and will not impermissibly frustrate the implementation of the FLSA.

    4. Attorney's Fees

Finally, "[w]here a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."  Wolinsky, 900 F. Supp. 2d at 336 (citing 29 U.S.C. § 216(b)).  Courts in this Circuit routinely approve fees that are one-third of the total settlement in FLSA actions.  See, e.g., Santos v. EL Tepeyac Butcher Shop Inc., 15 CV 814, 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

The Agreement provides for plaintiff's counsel to receive $10,386 in attorney's fees, which is 32% of the total settlement.  (Pl.'s Mot. at 2.)  This amount is pursuant to counsel's retainer agreement with plaintiff, and based on the submitted billing records, the award represents less than the actual accrued fees.  (See id. at 4; Ex. B, Dkt. No. 20-2.)  As such, I find that the proposed attorney's fees are fair and reasonable and I respectfully recommend that they be approved.

**CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiff's motion for settlement approval be granted.  Any objections to this report and recommendation must be filed electronically within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
           December 4, 2020

8